[Civ. No. 1303. Fifth Dist. July 24, 1970.]

H. R. MORTON, as Chief of Police, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
TED C. LINDSEY et al., Real Parties in Interest.

## COUNSEL

Spencer Thomas, Jr., City Attorney, Alan D. Davidson, Assistant City Attorney, A. Grant Macomber and Thomas G. Spenik, Deputy City Attorneys, for Petitioners.

No appearance for Respondent.

Pettis & Brott and Eugene E. Brott for Real Parties in Interest.

## OPINION

GARGANO, J.—The City of Fresno and its chief of police, H. R. Morton, have applied for a writ of prohibition to prevent further proceedings in the lawsuit now pending in the Superior Court of Fresno County, in which real parties in interest, hereafter referred to as real parties, seek a writ of mandate and declaratory relief. Petitioners contend that the superior court lacks jurisdiction because real parties did not exhaust their administrative remedy before filing the action. Petitioners allege that real parties are city employees with a labor grievance, and that they by-passed the grievance procedure adopted by the city manager to resolve such grievances. Under this procedure, which is the crux of this lawsuit, a city employee with a complaint relating to his employment may file a written grievance with his immediate supervisor, and if not satisfied with the decision of the supervisor, he may present the grievance to his department head. If the employee is not satisfied with the decision of the department head, he may appeal to the city manager through a grievance advisory committee consisting of five members. The grievance advisory committee must investigate the grievance, and upon completion of the investigation must file a written report with the city manager; the report must contain a statement of the facts and a recommended solution. The city manager then must render a decision.

It is undisputed that the action which petitioners seek to enjoin is primarily concerned with a labor dispute between real parties and the City of Fresno; real parties are police officers employed by the city, and they brought the action on behalf of themselves and all members of the Fresno Police Relief Association to secure a judicial declaration that the time consumed by policemen in putting on and taking off their uniforms and during lunch periods is compensable overtime.[1] It is also undisputed that real parties intentionally by-passed the city's grievance procedure. Real parties contend that their controversy with the city does not come within the scope of that procedure and that, in any event, the exhaustion doctrine does not apply to this case.

██ Because it is settled that the exhaustion of an administrative remedy, where one is available, is a condition precedent to obtaining judicial relief, and that "a court violating the rule acts in excess of jurisdiction" (*Hollon* v. *Pierce,* 257 Cal.App.2d 468, 475 [64 Cal.Rptr. 808]; see also *United States* v. *Superior Court,* 19 Cal.2d 189 [120 P.2d 26]), we shall consider petitioners' application for a writ of prohibition on the merits.

We turn first to real parties' contention that the present controversy does not come within the scope of the city's grievance procedure. They assert that (1) it is designed to solve minor personnel problems, not major policy disputes relating to overtime and similar matters, (2) it is permissive, not mandatory, (3) it is a regressive process, is not binding on any party and does not establish a reasonable standard for solving a grievance, and (4) it is illegal.

██ 1. Arguably, the city's grievance procedure was adopted by the city manager to solve only minor personnel problems as real parties maintain. It states, for example, that one criterion is that the grievance ". . . must arise out of an act or omission of a supervisor related directly to the employment relationship." On the other hand, it is the duty of the city manager to see that the provisions of the city charter and the city's municipal ordinances are executed and enforced (Charter of the City of Fresno,

---

[1]Real parties' complaint alleges that Fresno police officers consume at least 30 minutes a day in putting on and taking off their police uniforms, and that while they are allowed 30-minute lunch periods, the officers are required to conform to numerous stringent regulations. These regulations are set forth in the police manual and are essentially as follows: Meals cannot be eaten in establishments dealing principally in the sale of liquor; where the meal is eaten there must be a telephone nearby or the officer must be able to hear the police radio; permission must be given for a meal break and the location reported; meals must be eaten within the city limits unless special permission is first obtained to do otherwise; an officer may not consume alcohol during his mealtime; uniform and personal appearance must be proper; the officers must respond to citizens' requests in emergencies; limitations are placed on the number of officers who may eat together; police business may not be postponed so an officer may eat.

§ 705(a)). The administrative manual also states the purpose of the grievance procedure is to ". . . provide for the settlement of differences relating to employment or working conditions through an orderly grievance procedure." The requirement that police officers wear uniforms and the rules regulating their conduct during lunch periods are working conditions. In addition, the members of the police department are entitled to compensating time off (or in lieu thereof compensation) for overtime service.[2] It is, therefore, a reasonable assumption that at least one function of the grievance procedure is to enable the city manager to perform the duties imposed upon him by the charter. If there was any question about the applicability of the grievance procedure, it was incumbent upon real parties to present the question to the city manager so that he could decide the issue in the first instance. ■ It lies within the power of the administrative agency (in this case the city manager) to determine, in the first instance and before judicial relief may be obtained, whether a given controversy falls within its granted jurisdiction. (*United States* v. *Sing Tuck,* 194 U.S. 161 [48 L.Ed. 917, 24 S.Ct. 621]; *United States* v. *Superior Court, supra,* 19 Cal.2d 189, 194-195.)

■ 2. Real parties apparently believe that because an employee is not required to file a written grievance, he may resort to the judicial process without first submitting to the grievance procedure. ■ The basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief. ■ It is the rule that if an administrative remedy is available, it must be exhausted even though the administrative remedy is couched in permissive language (*Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]; *Clark* v. *State Personnel Board,* 61 Cal.App.2d 800 [144 P.2d 84]; *Child* v. *State Personnel Board,* 97 Cal.App.2d 467 [218 P.2d 52]). Understandably, a city employee is not required to file a grievance if he does not wish to do so, but he must first pursue this administrative remedy before resorting to the judicial process.

---

[2]Section 810 of the Fresno City Charter provides: "HOURS OF WORK. Except in case of extraordinary emergency, eight hours per day for not more than five days per week shall constitute a week's work for all employees of the City of Fresno except members of the city firefighting force who shall be required to work, on a twenty-four hour day basis, not more than sixty hours per week on an average, said average to be determined in multiples not to exceed ninety days." Municipal Code section 2-1514(c), as quoted in the petition for writ of mandate, provides: "Members of the fire and police departments shall be allowed equivalent time off with pay for overtime hours worked, such time off to be taken at times designated by the department head, or, in the discretion of the department head, members may be compensated by cash payment in lieu of such time off. . . ."

■ 3. The city's grievance procedure is somewhat cumbersome, and in some cases partially regressive; for example, real parties' request for overtime credit was refused by the chief of police, and under the grievance procedure they were required to back-track and file a grievance with their immediate supervisor who is a subordinate to the chief. Nevertheless, the procedure provides for a thorough review of an employee's grievance by a representative committee, and then for an appeal to the city manager who must make a decision. Had the present controversy been presented to the city manager, and had he decided that real parties were entitled to overtime credit under the city charter or municipal ordinance for time consumed in putting on and taking off their uniforms and during lunch periods, he could have enforced this interpretation of the law by ordering the chief of police to approve the overtime. As we have stated, the city manager is required, under the city charter, to see that the provisions of the charter and the ordinances of the city are executed and enforced. If the city manager had decided that real parties were not entitled to overtime credit, his decision would have had the finality necessary to enable real parties to resort to judicial process.

■ 4. Real parties believe that the city's grievance procedure is illegal as applied to the present controversy, because the city manager cannot delegate his discretionary powers on important policy questions; but, the city manager has not delegated any of his discretionary powers under the grievance procedure which he has adopted. He has merely set up a fact-finding committee with its power limited to making recommendations; the city manager has the sole responsibility of making the final decision.

■ We turn to real parties' contention that they were not required to exhaust their administrative remedy in this case, first because their lawsuit is a class action, and second, because the action is primarily concerned with questions of law.

We do not believe that a city employee may dispense with the city's grievance procedure merely because his grievance affects more than one employee or member of a class. If we were to permit a city employee, on important policy questions which vitally affect the city, to by-pass the very office charged with the duty of managing the city's affairs solely because his grievance affects more than one employee, we would foist upon the judicial branch the arduous task of solving governmental policy questions without giving the responsible governmental branch the opportunity to solve its own problems at the administrative level.

We conclude that because real parties have failed to demonstrate that

the city grievance procedure was inadequate to protect the members of the class they allegedly represent, they cannot prevail on this point. If real parties had filed a grievance, and if the city manager had ruled in their favor, the ruling would have applied to all police officers similarly affected. By the same token, if the city manager's decision had been adverse to real parties, it would have had the finality necessary to enable them to bring a class action.

The case of *Diaz* v. *Quitoriano,* 268 Cal.App.2d 807, 812 [74 Cal.Rptr. 358], does not stand for the proposition that the exhaustion doctrine never applies to a class action. The question presented in *Diaz* was completely beyond the pale of any available administrative remedy; petitioner, an indigent, had been denied aid to needy children by the welfare department of Sutter County and had not been advised of his right to a hearing before the State Department of Social Welfare; he was seeking a writ of mandate to compel the local welfare department to inform all indigents of their right to such a hearing. In *Diaz,* the petitioner's class action was not a blatant attempt to avoid the administrative remedy. On the contrary, the action was brought in the only possible forum which could make certain that in the future all indigent residents of Sutter County would be made aware of their administrative remedy so that they could utilize it if necessary. The court at page 812 of the opinion said: "In its aspect as a class action, this mandate proceeding seeks relief that is unavailable on the administrative appeal." However, it also added: "The rule that a party must exhaust his administrative remedies prior to seeking relief in the courts 'has no application in a situation where an administrative remedy is unavailable or inadequate.' "

■ There is authority for the rule that the exhaustion doctrine is inapplicable when constitutional or jurisdictional issues or questions of law are raised. However, the decisions are by no means uniform, and this view is not followed in California. In *United States* v. *Superior Court, supra,* 19 Cal.2d 189, the California Supreme Court held that the exhaustion doctrine not only applies to orders which are erroneous but also to those assailed as nullities because illegally adopted. In *Security First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319, 321 [217 P.2d 946], our Supreme Court held that resort to the administrative remedy was required even though the statute sought to be applied and enforced by the administrative agency was challenged upon constitutional grounds. It stands to reason that the exhaustion doctrine is applicable in a case such as this, which not only

raises mixed questions of law and fact but also involves fundamental policy questions which should be resolved on the local level if at all possible.

The writ is granted.

Stone, P. J., concurred.