[Civ. No. 36634. First Dist., Div. Four. Dec. 12, 1975.]

LESTER WM. ROTH et al., as Trustees, etc.,
Plaintiffs and Respondents, v.
CITY OF LOS ANGELES, Defendant and Appellant.

## Counsel

Donovan & Sommers' and Martin J. Spear for Plaintiffs and Respondents.

Burt Pines, City Attorney, John B. Rice, Assistant City Attorney, and Henry G. Morris, Deputy City Attorney, for Defendant and Appellant.

## Opinion

**CALDECOTT, P. J.**—Trustees for the Lester and Gertrude Roth Foundation (respondents) filed suit against appellant City of Los Angeles for the recovery of an assessment paid under protest. The trial court found in favor of respondents, holding the statutory scheme of Government Code sections 39560-39588 violative of due process and, in addition, finding certain overcharges in the assessment. The appeal is from the judgment.

Trustees for the Lester and Gertrude Roth Foundation are the owners of a certain lot of real property in Los Angeles County. On November 19, 1968, respondents were sent a notice from the Los Angeles Fire Department that their property had been inspected, and that the presence of certain vegetation thereon, described by location, size and type, constituted a violation of section 57.25.20 of the Los Angeles Municipal Code. The notice directed respondents to clear the vegetation, and informed them that failure to comply before December 6, 1968, would result in imposition of the penalties prescribed by law, or removal of the brush by the city and imposition of a lien upon the property for the cost of such removal. A telephone number for additional information was listed, and the notice was signed by the inspector.

Respondents did not respond to this notice. On January 14, 1969, without further notice, the city council passed Ordinance No. 137,986 pursuant to Government Code sections 39561-39563.[1] This ordinance declared that weeds (defined by § 39561.5) on certain private property (therein listed by lot and tract number and including respondents' land) constituted a public nuisance, and stated the intention of the city to abate said nuisance in accordance with the Government Code provisions.

[1]All references herein are to the Government Code, unless otherwise noted.

On January 19, 1969, in accordance with section 2 of the ordinance and Government Code sections 39566 and 39567.1, a notice of enactment of the ordinance was sent to respondents. This notice stated that the vegetation had been declared by ordinance to be a nuisance which must be abated, and that if respondents failed to take the necessary action to abate it the city would do so, with the cost thereof assessed to respondents and as a lien on the property. Pursuant to section 3 of the ordinance and Government Code sections 39566-39569, the notice also stated that property owners having objections to the proposed abatement should appear at the city council meeting of February 11, 1969, at a specified time and place, when property owners' "objections will be heard and given due consideration" and the council would make a final determination. Respondents failed to attend the hearing.

On February 11, 1969, the city council (Ordinance No. 138,207) ordered abatement of the public nuisance on respondents' property (§ 39571). In October 1969, the offending vegetation on respondents' property was removed. In compliance with sections 39574-39584, the city council assessed the sum of $767.70 on respondents' property for the costs of abatement. It is undisputed that respondents were overcharged by the sum of $23.10.

Respondents attended the city council meeting of February 16, 1970, held pursuant to section 39576, and protested the assessment. The assessment was confirmed. On December 7, 1970 and April 2, 1971, when respondents paid the assessment, they filed a written protest in accordance with Revenue and Taxation Code sections 5136-5137. The protest specified the grounds therefor, and asserted that the entire assessment was void.

Respondents thereafter instituted this action for recovery of the assessment, alleging that it was illegal and void both because the statutory procedure was violative of due process and because no nuisance had existed on the property. The trial court found, in sum, that although the city had proceeded in accordance with the relevant Government Code provisions, the assessment must be refunded. Failure to provide notice prior to the first ordinance, and the lack of certain statutorily expressed procedural guarantees for the hearing itself were held to violate due process. In addition, overcharges in the assessment in the sum of $23.10 were found.

## I

■ Appellant first contends that respondents were precluded from bringing this action for recovery of the assessments paid, insofar as they failed to comply with Government Code section 39585. That section provides: "The legislative body may order refunded all or part of a tax paid pursuant to this article if it finds that all or part of the tax has been erroneously levied. A tax or part shall not be refunded unless a claim is filed with the clerk of the legislative body on or before November 1st after the tax became due and payable. The claim shall be verified by the person who paid the tax, or his guardian, executor, or administrator."

Respondents paid the assessment in question under protest and brought suit for its recovery under the provisions of Revenue and Taxation Code sections 5136 and 5138.[2] The trial court properly concluded that, in view of the provisions for payment of taxes under protest, no claim need have been submitted.

■ It is well established in this state that the Revenue and Taxation Code provides two distinct and cumulative remedies for recovery of taxes. One is found at section 5096 et seq. (formerly Pol. Code, § 3804), and establishes a claims procedure similar to that created by Government Code section 39585. This is an administrative remedy, whereby the complainant may file a verified claim for refund and the appropriate authorities may direct payment thereof without the necessity for judicial sanction. The second remedy, provided in Revenue and Taxation Code section 5136 et seq. (formerly Pol. Code, § 3819), is through payment of the tax under protest, and subsequent suit in court for its recovery. When a taxpayer falls within the provisions of both, he may proceed under either. (*Brill* v. *County of Los Angeles*, 16 Cal.2d 726, 732-736 [108 P.2d 443]; *Stewart etc. Co.* v. *County of Alameda*, 142 Cal. 660, 665 [76 P. 481]; *Outer Harbor Co.* v. *Los Angeles*, 49 Cal.App. 120, 130 [193 P. 137].)

Government Code section 39581 states that "The amount of the assessment shall be collected at the time and in the manner of ordinary municipal taxes." Section 39583 provides that "Laws relating to the levy, collection, and enforcement of county taxes apply to such special assessment taxes." Thus, although section 39585 provides that "A tax . . .

---

[2]These sections provide, in relevant part, as follows:

"5136. After taxes are payable, any property owner may pay the taxes on his property under protest. A payment under protest is not a voluntary payment."

"5138. Within six months after the payment, an action may be brought against a county or a city in the superior court to recover the taxes paid under protest."

shall not be refunded unless a claim is filed with the clerk of the legislative body . . ." these other sections make all relevant provisions of the Revenue and Taxation Code applicable to assessments for weed abatement under the Government Code. As stated in *Hellman* v. *City of Los Angeles,* 147 Cal. 653, 655 [82 P. 313] (in reference to Pol. Code, § 3819, the predecessor to Rev. & Tax. Code § 5136): "It is quite plain that section 3819, found in chapter seven of the Political Code, under the title of 'Collection of Property Taxes,' is a part of the 'mode and manner' of collecting state and county taxes, and is none the less a part of that mode and manner in that it deals with the right of the taxpayer to pay under protest. It would be absurd to say that the mode and manner of collecting taxes was limited solely to the right of the state and its tax-collectors, and had reference only to the duties of the taxpayer, and no pertinency whatever to the taxpayer's correlative rights. It is a provision definitely declaring a certain mode and manner in which the taxpayer may pay his taxes and preserve his rights in case the assessment and levy should be found void."

Thus, section 39583, in calling for application of "[l]aws relating to the levy, collection, and enforcement of county taxes," must be read to include the procedures relating to taxes paid under protest. In light of the assessment design in the Government Code, based on a borrowing of relevant tax laws, the dual scheme for recovery envisioned by the Revenue and Taxation Code must be preserved. The administrative claims provisions of Government Code section 39585, so similar in their limitations to Revenue and Taxation Code section 5097, cannot be read to preclude utilization of the alternative judicial recovery system, contained in the tax laws expressly made applicable by Government Code section 39583.

Section 376 of the Los Angeles Charter, also urged by appellant (apparently for the first time on this appeal) is likewise not a bar to the instant suit. That general claims provision is not controlling in suits for taxes paid under protest. (*Southern Cal. Tel. Co.* v. *Los Angeles,* 45 Cal.App.2d 111, 127-128 [113 P.2d 773]; cf. *Brill* v. *County of Los Angeles, supra,* 16 Cal.2d 726; *Signal Oil & Gas Co.* v. *Bradbury,* 183 Cal.App.2d 40, 48-53 [6 Cal.Rptr. 736].)

## II

Appellant next contends that respondents were precluded from bringing the action below because they failed to exhaust their available administrative remedies.

Several sections of the Government Code[3] set forth the remedy asserted by appellant as a bar to the suit. Notice of the hearing provided by these sections was sent by appellant to respondents. The notice stated, as specified in section 39566, that owners having objections to the proposed abatement should attend a city council meeting at 10 a.m. on February 11, 1969, "when their objections will be heard and be given due consideration." Respondents failed to attend this hearing.

The doctrine of exhaustion of administrative remedies is well settled in this state. ▇ If an administrative remedy is provided by statute, it must be invoked and exhausted before judicial review of the administrative action is available. (*Ralph's Chrysler-Plymouth* v. *New Car Dealers Policy & Appeals Bd.,* 8 Cal.3d 792, 794 [106 Cal.Rptr. 169, 505 P.2d 1009]; *Temescal Water Co.* v. *Dept. Public Works,* 44 Cal.2d 90, 106 [280 P.2d 1].) This rule is not a matter of judicial discretion, but rather is a jurisdictional prerequisite. (*Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715]; *Morton* v. *Superior Court,* 9 Cal.App.3d 977, 981 [88 Cal.Rptr. 533].)

---

[3]"§ 39566. The notice shall be substantially in the following form:

NOTICE TO DESTROY WEEDS AND REMOVE
RUBBISH, REFUSE, AND DIRT

Notice is hereby given that . . .
All property owners having any objections to the proposed removal of the weeds, rubbish, refuse, and dirt are hereby notified to attend a meeting of the (name of the legislative body) of (city or town) to be held (give date), when their objections will be heard and given due consideration."
"§ 39567. The notices shall be posted at least five days prior to the time for hearing objections by the legislative body."
"§ 39567.1. As an alternative to posting notice of the resolution and notice of the meeting when objections will be heard, the legislative body may direct the city clerk to mail written notice of the proposed abatement to all persons owning property described in the resolution. The city clerk shall cause such written notice to be mailed to each person to whom such described property is assessed in the last equalized assessment roll available on the date the resolution was adopted by the legislative body. . . . [¶] The notices mailed by the city clerk shall be mailed at least five days prior to the time for hearing objections by the legislative body. [¶] The notices mailed by the city clerk shall be substantially in the form provided by Section 39566, except, that notices shall be signed by the city clerk and the heading of the notice need not comply with Section 39565."
"§ 39568. At the time stated in the notices, the legislative body shall hear and consider all objections to the proposed removal of weeds, rubbish, refuse, and dirt. It may continue the hearing from time to time."
"§ 39569. By motion or resolution at the conclusion of the hearing the legislative body shall allow or overrule any objections. At that time the legislative body acquires jurisdiction to proceed and perform the work of removal."

"[E]ven where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief." (*United States* v. *Superior Court,* 19 Cal.2d 189, 195 [120 P.2d 26]; *Smith* v. *City of Duarte,* 228 Cal.App.2d 267, 269 [39 Cal.Rptr. 524]; *People* v. *Coit Ranch, Inc.,* 204 Cal.App.2d 52, 57-58 [21 Cal.Rptr. 875]; *Dunham* v. *City of Westminster,* 202 Cal.App.2d 245, 249 [20 Cal.Rptr. 772]; *Tushner* v. *Griesinger,* 171 Cal.App.2d 599, 606 [341 P.2d 416].) "There is authority for the rule that the exhaustion doctrine is inapplicable when constitutional or jurisdictional issues or questions of law are raised. However, the decisions are by no means uniform, and this view is not followed in California." (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d at p. 984.) ■ Asserted denial of due process, therefore, is not ordinarily an excuse for failure to exhaust administrative remedies. (*City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307].)

Nor does section 5138 of the Revenue and Taxation Code, under which respondents filed suit below, dispense with the obligation to exhaust administrative remedies as a condition precedent to judicial jurisdiction. (*Westinghouse Elec. Corp.* v. *County of Los Angeles,* 42 Cal.App.3d 32, 38 [116 Cal.Rptr. 742].) ■ As a general rule, a taxpayer seeking judicial relief from an erroneous assessment must exhaust administrative remedies first. (*Stenocord Corp.* v. *City etc. of San Francisco,* 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966].)

■ Respondents' failure to attend the city council hearing of February 11, 1969, to present their objections to the proposed abatement, constitutes a nonexhaustion of an available administrative remedy. The fact that the remedy is no longer available does not, of course, alter application of the doctrine, as to hold otherwise would obviously permit circumvention of the entire judicial policy behind the doctrine. (*Alexander* v. *State Personnel Bd.,* 22 Cal.2d 198 [137 P.2d 433]; cf. *Humbert* v. *Castro Valley County Fire Protection Dist.,* 214 Cal.App.2d 1 [29 Cal.Rptr. 158].)

In both their protest letter upon payment of the tax and their complaint below, respondents stated numerous factual objections to the declaration and abatement of the nuisance which, if presented to the city council at its February 11, 1969, hearing, could have been valid grounds for nonabatement. Respondents claimed that the vegetation on their property was not within the Government Code definition of "weeds"; that the vegetation was fire resistant; that the vegetation was not located

in any unlawful manner; and that the vegetation was necessary to prevent erosion of the soil and consequent law suits by neighboring property owners. Any or all of these arguments could have been raised at the hearing before the city council and acted upon at that time, thus avoiding the need for the action herein. This is the precise reason for the existence of the exhaustion rule. As respondents chose not to attend that hearing, they should be precluded from attacking the abatement procedure in this judicial action.[4]

However, the due process violation alleged by respondents presents a further question. Although the general rule, stated earlier, forbids a judicial action when administrative remedies have not been exhausted, even as to constitutional challenges, if the remedy provided does not itself square with the requirements of due process the exhaustion doctrine has no application. "We have recently held that an opportunity for administrative review does not constitute the sort of 'remedy' which a party must exhaust before invoking the assistance of the courts unless the statute or regulation under which such review is offered 'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties.' (*Rosenfield* v. *Malcolm, supra,* 65 Cal.2d at p. 566 [55 Cal.Rptr. 505, 421 P.2d 697]; see the cases discussed at pp. 566-567; see also *People* v. *Broad* (1932) 216 Cal. 1, 7-8 [12 P.2d 941].)" (*Endler* v. *Schutzbank,* 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297].)

 We must, therefore, consider respondents' due process claim in order to determine whether the administrative relief that they failed to exhaust was an appropriate "remedy."

## III

The court below found the code provisions defective in two regards. First, no notice is given to any property owner prior to the legislative body's initial ordinance determination that a nuisance exists (§§ 39561-39563). Second, the statutory provisions for a hearing to contest the proposed abatement give "no hint that at such hearing evidence will be received from the objector in an orderly fashion, or that the objector will have access to the reports, or personnel making such reports so that the [*sic*] rebuttal and cross-examinations will be available. . . . A fair

---

[4]Respondents did, however, attend the city council hearing of February 16, 1970, to protest the amount of the assessment, and were therefore not precluded from reasserting such claim below.

opportunity to present evidence on the issue[s] . . . must not just be afforded in fact, but under the applicable statutes." (See *Leppo* v. *City of Petaluma,* 20 Cal.App.3d 711, 717-718 [97 Cal.Rptr. 840]; *People* v. *Gates,* 41 Cal.App.3d 590, 601-602 [116 Cal.Rptr. 172].)

■ The first point argued by respondents is that the failure to give notice prior to the preliminary determination of the existence of a nuisance violates due process. *Thain* v. *City of Palo Alto,* 207 Cal.App.2d 173 [24 Cal.Rptr. 515], found a virtually identical local ordinance procedure consonant with constitutional requirements. "It is well settled that when special or local assessments have been levied by a municipality for such improvements, procedural due process is satisfied if at *some* stage of the proceedings the owner of the property affected is given notice and the opportunity to be heard on the question of the validity, fairness and amount of the assessment [citations omitted] . . . . The foregoing authorities support the propositions that the requirements of due process are met where notice and an opportunity to be heard are afforded the property owner at some time before the assessment becomes final and that such notice is sufficient even where it is given after the improvement but before the assessment becomes final. (See 48 Am.Jur., Special or Local Assessments, § 169, p. 707; 63 C.J.S., Municipal Corporations, § 1401, p. 1177.)

"Applying the foregoing principles, we conclude that the notice provisions of City's ordinance satisfy the requirements of due process. While section 32.02 of the ordinance provides for a resolution of the City Council declaring weeds a public nuisance to be passed at a meeting without prior notice thereof to the property owner, the property owners are given notice by publication of such resolution, of the proposed destruction or removal of weeds and of the subsequent public meeting of the City Council at which they will have an opportunity to protest the contemplated abatement." (*Thain* v. *City of Palo Alto, supra,* 207 Cal.App.2d at pp. 190-191.)

Moreover, it is clear under section 39569 that the city cannot act to abate the nuisance until the hearing is concluded. The preliminary declaration is not final as against the landowner, and respondents fail to suggest how they are "deprived" of any property interest at that juncture. Neither abatement nor assessment can occur until the hearing is held pursuant to the statute. In this sense, notice following the preliminary ordinance serves much the same purpose as a complaint in a civil suit; that is, it notifies the property owner that the city alleges the existence of

an abateable nuisance on his land, and unless he appears at the hearing to present his argument, the city's allegations will be uncontroverted and the nuisance will be found and ordered abated. Again, it must be stressed that the legislative body *only* acquires jurisdiction to proceed with abatement *after* the hearing.

Respondents' second allegation of constitutional infirmity relates to the procedure at the hearing itself. As observed earlier, respondents did not attend the hearing, and there is no evidence in the record as to the actual procedure followed at the hearing.

It has been generally stated that due process requirements depend on the circumstances of the particular situation, and vary with the subject matter and the necessities of the situation. Factors such as the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures must be considered. (*Sokol* v. *Public Utilities Commission,* 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265].) "Due process does not require any particular form of notice or method of procedure. If the statute provides for reasonable notice and a reasonable opportunity to be heard, that is all that is required." (*Drummey* v. *State Bd. of Funeral Directors,* 13 Cal.2d 75, 80-81 [87 P.2d 848]; *CEEED* v. *California Coastal Zone Conservation Comm.,* 43 Cal.App.3d 306, 329 [118 Cal.Rptr. 315].)

The court below apparently concluded that, unless the precise procedural rights of objecting property owners are expressed in the statutes, due process is violated. The case cited for this statement (*People* v. *Lockheed Shipbuilding & Constr. Co.,* 35 Cal.App.3d 776 [111 Cal.Rptr. 106]) does not support that conclusion. Rather, *Lockheed* merely reasserts the well-established rule that *some* form of notice and hearing must be provided by the statute itself and the statute in *Lockheed* made no provision for a hearing.

■ The trial court's conclusion of unconstitutionality in view of the statutory provisions for notice (§§ 39566, 39567, 39567.1) and a hearing (§§ 39566, 39568, 39569), was erroneous. There was no evidence that the hearing before the city council proceeded in other than an orderly manner, or that respondents (and other objecting property owners) would not be accorded all procedural rights required by due process. Respondents' citation of *Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383], is inapposite, for in that case the plaintiff attended the administrative hearing and provided evidence of

the exact procedure utilized, which the trial court found defective. No such evidence was presented in the present case.

The statutory scheme provides for notice and an opportunity to be heard; it would be contrary to settled rules of construction to *presume,* in the absence of any supporting evidence, that the procedures utilized thereunder are constitutionally defective. "The familiar rules, however, require that 'The Constitution and the statute are to be read together,' and that if 'the terms of a statute are by fair and reasonable interpretation capable of a meaning consistent with the requirements of the Constitution, the statute will be given that meaning, rather than another in conflict with the Constitution.' " (*County of Madera* v. *Gendron,* 59 Cal.2d 798, 801 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555]; *People* v. *Davis,* 68 Cal.2d 481, 483-484 [67 Cal.Rptr. 547, 439 P.2d 651]; *Tilghman* v. *Superior Court,* 40 Cal.App.3d 599, 608 [115 Cal.Rptr. 195].) The presumption must be in favor of the validity of the statute and consistency with constitutional requirements if this is possible under a reasonable interpretation, as it is here. The recent case of *People* v. *Amor,* 12 Cal.3d 20 [114 Cal.Rptr. 765, 523 P.2d 1173], plainly refutes the basis for the trial court's determination. In that decision, the court considered whether Penal Code section 987.8, relating to recoupment of costs of appointed counsel, violated due process in its failure to expressly provide for prior notice and a hearing. The court stated: "Just as the Supreme Court of the United States in *Morrissey* did not hold the Iowa statute there involved unconstitutional on the ground that it did not expressly provide for notice or a hearing, we did not hold the statutory provision under consideration in *Vickers* unconstitutional on the ground that it did not specifically spell out all the requirements for due process thereunder. The important factor in each instance was determined to be whether the minimum requirements for due process had been satisfied —not whether they were statutorily required." (12 Cal.3d at p. 30.)

The court in *People* v. *Amor, supra,* at page 30, further held: "Under the circumstances, since the proceedings against defendant comported with due process requirements, and the statute did not expressly sanction the taking of her property without compliance with such requirements, we hold that defendant was not deprived of her constitutional right to due process and that the fact that the statute does not expressly provide for notice and a hearing does not render it unconstitutional. Furthermore, not only may the requirements of notice and a hearing be implied from the due process clause, but, in addition, the rights to discovery, confrontation, cross-examination, and other procedural devices may likewise be implied."

Further, the ever-changing specific requirements of procedural due process may, within the scope of the hearing granted by statute, be supplied by court rule as well as statutory expression. "Statutory administrative procedures have been augmented with common law rules whenever it appeared necessary to promote fair hearings and effective judicial review. In *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260 [246 P.2d 656], we construed a statute requiring a licensing agency to 'ascertain' facts to require the agency to give notice and hold a hearing. In *English* v. *City of Long Beach,* 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547], we augmented the applicable statutory rules and required the agency involved to afford the accused an opportunity to rebut ex parte evidence before it. In *Brotsky* v. *State Bar,* 57 Cal.2d 287 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310], we held that discovery was appropriate in state bar disciplinary proceedings. These cases illustrate Professor Davis' observation that the law determining the adequacy of administrative hearings 'is mostly judge-made law . . .' and 'the standards are essentially the same whether judges are giving content to due process, whether they are giving meaning to inexplicit statutory provisions, or whether they are developing a kind of common law.' (Davis, 1 Administrative Law Treatise (1958) § 7.20, p. 506.)" (*Shively* v. *Stewart,* 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431]; cf. *Carroll* v. *California Horse Racing Bd.,* 16 Cal.2d 164, 168 [105 P.2d 110].) This rule indicates that the due process procedures enumerated in such cases as *Thain, Armistead* v. *City of Los Angeles,* 152 Cal.App.2d 319 [313 P.2d 127], and *Leppo* can and should be applied to hearings under the applicable sections of the Government Code. There is nothing in the record to indicate that the hearing of February 11, 1969, proceeded otherwise. Thus, the trial court's finding of a due process violation was in error, and respondents' failure to exhaust their administrative remedy through the city council hearing is fatal to their attack on the abatement procedure in this action.

The judgment is reversed, except for that part of the judgment awarding respondents $23.10, plus interest. The parties will bear their own costs.

Christian J., and Emerson, J.,* concurred.

A petition for a rehearing was denied January 9, 1976, and respondents' petition for a hearing by the Supreme Court was denied February 18, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.