[No. B005936. Second Dist., Div. Three. May 20, 1985.]

BOARD OF POLICE COMMISSIONERS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EASEBE ENTERPRISES, INC., Real Party in Interest.

424

COUNSEL

Ira Reiner, City Attorney, Frederick N. Merkin, Senior Assistant City Attorney, Robert Cramer, Assistant City Attorney, and Pamela Victorine, Deputy City Attorney, for Petitioners.

No appearance for Respondent.

Solomon, Saltsman & Hart and Ralph B. Saltsman for Real Party in Interest.

OPINION

**KLEIN, P. J.**—The Board of Police Commissioners of the City of Los Angeles and Daryl F. Gates (Board) petitioned this court for a writ of mandate/prohibition to set aside a preliminary injunction restraining it from conducting an administrative hearing to determine whether certain permits held by Easebe Enterprises, Inc., dba Chippendales, (Easebe) should be revoked or suspended due to numerous alleged violations of the Los Angeles Municipal Code, particularly overcrowding.

Because the Board had jurisdiction to hold its scheduled hearings on the accusations and Easebe did not exhaust its administrative remedies, the superior court was without jurisdiction to act. Therefore, the petition for a writ of prohibition is granted.

PROCEDURAL AND FACTUAL BACKGROUND[1]

In March 1979, the Board granted Easebe a dance hall permit pursuant to Los Angeles Municipal Code (Code) section 103.106. In March 1980, Easebe received a cafe entertainment and shows (Cafe Entertainment/ Shows) permit pursuant to section 103.102.[2]

Between February 1983 and March 1984, a series of accusations were brought before the Board charging Easebe with numerous violations of the Code, including overcrowding. A hearing on these allegations was set by the Board for June 1, 1984. Easebe sought injunctive relief, and on May 9,

---

[1]The facts are gleaned from the pleadings on appeal, and the record as supplemented on the court's own motion pursuant to California Rules of Court, rule 12a including the "Certification of Occupancy."

[2]All subsequent references to the Los Angeles Municipal Code will be by section number only.

1984, the superior court issued an order to show cause why a preliminary injunction enjoining further prosecution should not issue.

Following two days of hearings, the superior court granted a preliminary injunction on the grounds that the Cafe Entertainment/Shows permit, section 103.102, subdivision (f), set forth the sole jurisdictional basis for suspension or revocation of both permits, and that the allegations in the accusation did not constitute a violation of section 103.102(f).

The Board filed a petition for a writ of mandate/prohibition with this court charging the superior court was without jurisdiction to act because Easebe did not exhaust its administrative remedies. On July 17, 1984, this court issued an alternative writ directing the superior court to either vacate its order or to show cause why it should not do so. The superior court declined.

## DISCUSSION

I. *Applicable statutory scheme re suspension or revocation.*

a. *Introductory information.*

Easebe was required to obtain police permits to operate Chippendales, at which dancing and live entertainment were offered, pursuant to the Code chapter X, entitled Business Regulations.

█ Section 103.102 governs Cafe Entertainment/Shows, and Easebe's permit was granted in conformity with subdivision (c) which reads in pertinent part: "No persons shall engage in cafe entertainment and shows business without a written permit from the Board. [¶] The provisions of this Section *shall* govern the power of the Board to issue, deny, suspend or revoke a permit . . . ." (Italics added.)

Subdivision (f) thereof controls suspension or revocation of any permit issued under section 103.102, subdivision (c) and provides for suspension or revocation when the *building* of the business constitutes a threat to the public health or safety.[3]

---

[3]Section 103.102, subdivision (f) states in pertinent part: "After an investigation, notice, and hearing, the Board shall suspend or revoke an existing permit or impose such conditions upon the retention of the permit as shall be found to be necessary to assure the preservation of the public health and safety, if the evidence presented establishes that one or more of the following conditions exist: [¶] (1) The building, structure, equipment or location of such business does not comply with the requirements or fails to meet the standards of the health, zoning, fire and safety laws of the State of California and ordinances of the City of Los Angeles applicable thereto."
(Note: These numbers are as they were listed in the petition. This section has since been renumbered effective Apr. 29, 1984.)

The dance hall permit was governed by section 103.106, which section does not contain the mandatory language re revocation and suspension found in section 103.102.[4] Therefore, other provisions within the statutory scheme must be looked to for grounds of revocation or suspension of said permit. Sections 103.34 "Suspension or Revocation of Permits," and 103.35 "Disciplinary Action—Grounds" so provide.

■ Section 103.34 allows: "The Board [to], . . . temporarily suspend for a period not exceeding one year or revoke the permit of any permittee who commits any one or more of the acts or omissions constituting grounds for disciplinary action under this Article."

Section 103.35 states the grounds for discipline and provides that: "It shall be a ground for disciplinary action if any permittee, . . . has: [¶] . . . . [¶] (b) Violated any provision of this Article or of any statute relating to his permitted activity; or [¶] . . . . [¶] (f) Committed any unlawful, . . . or dangerous act while conducting a permitted business; or [¶] . . . . [¶] (j) Conducted the permitted business in a manner contrary to the peace, health, safety, and general welfare of the public; . . ."

■ Section 57.10.30 regulates occupancy so as to prevent overcrowding, and makes the person in charge of the premises responsible for preventing overcrowding.

Section 54.10.34 also places the responsibility on the person in control to limit occupancy to that number allowed as a condition of the permit.

b. *Section 103.102 fatally infirm in application here.*

■ When the Board sought to hold a hearing on the allegations in the accusations including overcrowding under these and other sections, Easebe immediately filed a petition to enjoin any such hearing, claiming the Board would be acting in excess of its jurisdiction because any action to revoke or suspend Easebe's permit due to overcrowding would be contrary to its "defined power."

---

[4]Section 103.106 sets forth in part: "1. 'DANCE HALL' means any place where the holding or conducting of public dances is carried on. [¶] . . . . [¶] (b) Permit required. No person shall conduct or maintain any dance hall, dancing club or public dance without written permit from the Board. [¶] 1. A permit shall be required to hold any public dance on one occasion. [¶] (c) Floor Space. . . . [¶] The application for permit shall specify each location on the premises, the dimensions and the nature of the surface designated for dancing. A surface area designated for dancing shall not be located in a manner which blocks or obstructs ingress or egress of patrons at the dance."

Easebe's theory was that subdivision (f) of section 103.102, *which section deals with constitutionally protected activity,* refers only to the *condition of the building,* but not its *use,* which overcrowding would constitute.

When confronted with Easebe's position, in spite of the mandatory and limiting language of section 103.102 with the use of the word "shall," the Board argued it could rely on other general provisions of the statutory scheme.

The Board's reliance on sections other than 103.102 for the revocation or suspension of the Cafe Entertainment/Shows permit is misplaced. Section 103.102 was expressly drafted to cover the First Amendment protected activity and is controlling. However, section 103.102, subdivision (b)(1) is fatally flawed in its *application* here in that it does not regulate the *use* of the building, merely the condition thereof.

■ A similar statute which withstood judicial scrutiny is found in *12319 Corp.* v. *Business License Com.* (1982) 137 Cal.App.3d 54, 65-66, footnote 4 [186 Cal.Rptr. 726], dealing with a Los Angeles County ordinance affecting "ACTIVITIES WHICH MAY INVOLVE FREE SPEECH" requiring a permit as a condition to offering entertainment of any sort.

The *12319 Corporation* court held that the nightclub's entertainment license involved First Amendment protected activities, but could be suspended or revoked for failure to comply with fire and safety requirements of the law. (*Id.,* at p. 65.) The ordinance in *12319 Corporation* stated a license could be suspended or revoked if one or more conditions existed, including as in section 103.102, subdivision (f), "[t]he building, structure, equipment or location of such business does not comply with or fails to meet all of the health, zoning, fire and safety requirements or standards of all the laws of the State of California or ordinances of the County of Los Angeles," (*Id.,* at pp. 65-66, fn. 4) and further adding, "*applicable to such business operation.*" (*Ibid.,* italics added.)

Thus, the county ordinance in *12319 Corporation* contained the crucial phrase which is glaringly absent in section 103.102, subdivision (f), namely, "*applicable to such business operation.*" (*Id.,* at p. 66, fn. 4, italics added.)

It may seem overly technical to fault 103.102, subdivision (f) for lacking the express language of the county ordinance because obviously the city must have intended to control the *business operation* as well as the structure in which the business is being conducted. But statutes regulating First Amendment protected activities are subject to strict scrutiny.

*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840], cited by the *12319 Corporation* court, also dealt with the Board of Police Commissioners of the City of Los Angeles and city ordinances. There, the Board denied an application for a renewal of a permit to operate a roller skating rink. Upholding the denial, the *Sunset* court found that any First Amendment activities associated with the operation of the Hollywood Rollerbowl would be "negligible and wholly incidental" to its obvious function of providing amusement and exercise. (*Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* at p. 75.)

The *Sunset* court indicated that where First Amendment activities are involved, as here, licensing ordinances are subject to strict scrutiny, citing *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281], among other cases. (*Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* at p. 72.) "The crucial factor here is our zealous solicitude for rights falling within the protection of the First Amendment," since in that category of cases, " ' "*precision of regulation must be the touchstone.*" ' " (*Burton* v. *Municipal Court, supra,* at pp. 690-691, italics added.)

Irrespective of the presumed intent of the city, it would be poor precedent to read an entire phrase enabling an entirely different meaning, into a statute which requires "precision of regulation"; therefore, section 103.102, subdivision (f) fails in its application here.

c. *Section 103.106 does not cover constitutionally protected activity.*

 However, both Easebe and the superior court were in error in concluding that section 103.102 applied to *both* permits; clearly it does not. The dance hall permit is specifically governed by 103.106 and other sections of the statutory scheme are applicable.

Section 103.106 defines a "dance hall," and public dancing as "a gathering of persons in or upon any premises where dancing is participated in and to which premises the public is admitted."

In *7978 Corp.* v. *Pitchess* (1974) 41 Cal.App.3d 42, 48-49 [115 Cal.Rptr. 746], the court distinguished between the type of activity regulated under Los Angeles County entertainment permits and dance hall permits: "The entertainment provisions . . . do not purport to regulate customer dancing; that activity is regulated by the dancing provisions. A commercial establishment providing dancing for its customers must obtain a dancing license. A commercial establishment providing entertainment must obtain an enter-

tainment license. A commercial establishment providing both dancing and entertainment must obtain both licenses."

■ In *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at page 74, the court noted that "no case has ever held or suggested that simple physical activity falls within the ambit of the First Amendment, at least in the absence of some element of communicating or advancing ideas or beliefs. Petitioners rely upon *In re Giannini, supra,* 69 Cal.2d 563, 567-572, wherein a majority of this court held that the performance of a non-obscene dance for an audience constitutes a method of expression protected by the First Amendment. It is apparent, however, that *Giannini's* rationale would be inapplicable to the activities conducted by petitioners herein. *Giannini* sought to express the principle that '*all* forms of communication, not merely the expression of concrete and definite ideas, *potentially* receive First Amendment protection.' (P. 569, italics in original.) The key element is, of course, *communication.* We have difficulty finding that essential element to exist in the context of a roller skating rink. True, it is inevitable that some patrons of the rink watch the other skaters and are, perhaps, entertained or amused by their activities. And yet it seems inescapable that petitioners' patrons primarily use the facilities for physical exercise and personal pleasure; *Giannini*'s element of communication between an artist or performer and his audience seems entirely lacking."

Here, the section 103.106 dance hall permit covers "recreational" dancing which is not protected by First Amendment.

■ (1) *Section 103.35 controls the revocation or suspension of a dance hall permit under section 103.106.*

Unlike the Cafe Entertainment/Shows permit's section 103.102, subdivision (f), section 103.106 has no revocation or suspension section specifically incorporated into it. Therefore, revocation and suspension procedures for that permit must be located elsewhere in the Code.

Under the Code's listing of powers of the Board, section 103.34 allows for suspension or revocation of permits generally and section 103.35 spells out the grounds. *Saunders* v. *City of Los Angeles* (1969) 273 Cal.App.2d 407, 410 [78 Cal.Rptr. 236] [disapproved on other grounds, (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 235, fn. 41 [82 Cal.Rptr. 175, 461 P.2d 375]), held that sections 103.34 and 103.35 were intended to cover the revocation or suspension of a permit.

It was well within the Board's jurisdiction to go forward with a hearing on whether grounds existed to suspend or revoke Easebe's dance hall per-

mit, pursuant to sections 103.106, 103.34, 103.35, and other pertinent sections.

2. *Exhaustion of administrative remedies.*

a. *Applicable jurisdictional concepts.*

■ The Board claims it had jurisdiction of both the permitee and the permits and should have been allowed to hold its hearing, and that the superior court acted in excess of its jurisdiction in intervening and enjoining the Board from proceeding.

Easebe counters that section 103.102 simply does not apply because it does not affect *use* of the building, and therefore the Board was without subject matter jurisdiction to proceed, citing *County of Alpine* v. *County of Tuolumne* (1958) 49 Cal.2d 787 [322 P.2d 449]. The *Alpine* court reasoned that the commission therein had no subject matter jurisdiction because it only had power to survey and mark boundaries and was without jurisdiction to determine boundaries between cities and counties. (*Id.*, at pp. 797-798.)

Here, the Board has jurisdiction in the fundamental or strict sense. The statutory scheme conferred upon it the responsibility for issuing police permits and overseeing the proper use of same, including any revocation or suspension. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)

Further, the Board initially had jurisdiction to determine whether it had jurisdiction to act (*Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 476 [64 Cal.Rptr. 808]), even as against a claim of unconstitutionality as to the empowering ordinance. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 195 [120 P.2d 26]; *People* v. *Coit Ranch Inc.* (1962) 204 Cal.App.2d 52, 57-58 [21 Cal.Rptr. 875]; *Roth* v. *City of Los Angeles* (1975) 53 Cal.App.3d 679, 687 [126 Cal.Rptr. 163].) An administrative agency has the power to determine in the first instance, and before any *judicial relief* may be obtained, whether a given controversy falls within its statutory grant of jurisdiction. (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533]; *Hollon* v. *Pierce, supra,* at p. 476; *People* v. *Coit Ranch, Inc., supra,* at p. 58; *United States* v. *Superior Court, supra,* at p. 195.)

b. *General rule.*

■ "Where an administrative remedy is provided by statute, relief must be sought from the administrative body and the remedy exhausted

before the courts will act; a court violating the rule acts in excess of juris-diction." (*Hollon* v. *Pierce, supra,* 257 Cal.App.2d at p. 475; accord *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at pp. 291-292.)

But for a few exceptions, once the administrative agency has initiated adjudicatory proceedings, the exhaustion doctrine cannot be circumvented by bringing an action seeking injunctive relief. (*People* v. *Coit Ranch, supra,* 204 Cal.App.2d at p. 58; Deering, Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 2.9, pp. 18-19.)

In two cases, the Supreme Court excepted the exhaustion doctrine. In *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 543-544 [63 Cal.Rptr. 21, 432 P.2d 717], in an application for declaratory relief and injunction, the exhaustion of administrative remedies was excused by the court, which found that jurisdiction had not yet attached to the administrative body because *only an investigation was pending and no formal accusation had been filed.*

In *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 6 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], petitioners sought a writ to prevent revocation of their on-sale liquor license for employing female bartenders in violation of a statute which they contended was in violation of the state and federal Constitutions and the Civil Rights Act. The conflicting state and federal laws threatened to penalize petitioners regardless of what action they took. The court found "[i]n light of these extraordinary circumstances, it would be improper to require them to exhaust their administrative remedies." (*Id.,* at p. 7.)

Later cases continue to hold a constitutional challenge does not excuse the exhaustion of administrative remedies. (*Subriar* v. *City of Bakersfield* (1976) 59 Cal.App.3d 175, 193 [130 Cal.Rptr. 853]; *Roth* v. *City of Los Angeles, supra,* 53 Cal.App.3d at p. 687.) We deem this to be the better rule, agreeing with exceptions for unusual factual circumstances.

This rationale is necessary for the exhaustion doctrine to be meaningful. Without such a rule, persons subject to administrative procedures with claims of unconstitutionality urged on requests for injunctive relief would clog the courts, and administrative agencies would be bypassed and become impotent.

There is no reason for an exception in this case. Section 103.102 is constitutional on its face because the requirement that a permit be obtained before conducting a business has long been recognized as a valid exercise of police power. (*Burton* v. *Municipal Court, supra,* 68 Cal.2d at pp. 689-

690), and a municipality has broad power to enact ordinances relating to the public health, safety and welfare of its citizens. (*Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at p. 72.) ▮▮▮ Even economic activity which falls within First Amendment protection may be subjected to reasonable regulation. (*12319 Corp.* v. *Business License Com.,* *supra,* 137 Cal.App.3d at p. 65.)

▮▮▮ The Board had jurisdiction of both the person and the subject matter as to both permits, and also the authority to determine the constitutionality of section 103.102 in its application to this fact situation. Therefore, the Board should go forward with its hearing, however within the directives of this opinion.

3. *Alleged irreparable harm in this case does not excuse exhaustion of administrative remedies.*

▮▮▮ In justifying seeking injunctive relief, Easebe argues it would have been irreparably harmed had the Board been allowed to proceed with its hearing. If irreparable harm were established, a party need not exhaust administrative remedies. (*Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 89-90 [143 Cal.Rptr. 441].)[5]

Easebe relies on *Greenblatt* v. *Munro* (1958) 161 Cal.App.2d 596 [326 P.2d 929], in support of its claim. In *Greenblatt,* the circumstances were exceptional, and the court allowed Greenblatt, the holder of an on-sale liquor license, to seek judicial relief before exhausting his administrative remedies. (*Id.,* at pp. 606-607.)

Greenblatt was charged with two almost identical counts of permitting a female employee to solicit the purchase of an alcoholic beverage. The agency erroneously determined the activity under the second count also to be a Penal Code violation. The court reasoning that because the *set* penalty for the first count was a 60-day suspension of the license, and a conviction on the second count would automatically cause Greenblatt to lose his liquor license, acquiesced to the judicial intervention.

In *United Insurance Co.* v. *Maloney* (1954) 127 Cal.App.2d 155, 156-157 [273 P.2d 579], accusations were filed charging United Insurance Co. with misrepresenting disability policies. United Insurance Co. attempted to

---

[5]Although the superior court did not use irreparable harm as a basis for its statement of decision, because Easebe argued that issue, if that decision were correct, albeit based on the wrong rule of law, the judgment must be upheld. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; 6 Witkin, Cal. Procedure (2d Ed. 1971) Appeal, §§ 226, 228, pp. 4215-4217.)

circumvent the hearing, which was already scheduled, by seeking injunctive relief, claiming an unconstitutional discriminatory application of the law, and that it would thereby suffer irreparable harm.

The *United Insurance Co.* court went on to say: "[T]here are [no cases] in which the type of action taken by the administrative body was merely setting an accusation or other matter for hearing, nor was the type of injury which may result to a person from the fact of a hearing one which was considered as the irreparable injury necessary for the application of the exception. Thus, the cases seem to require for its application some action by the administrative body more than setting a matter for hearing, and some injury more than that caused by the fact of hearing, . . ." (*Id.*, at pp. 158-159.)

Here, the penalty or harm is uncertain and not set; only accusations have been made and a hearing scheduled. Potential permit loss by itself is not a sufficient exception to the rule of exhaustion of administrative remedies. (*Mountain View Chamber of Commerce* v. *City of Mountain View, supra,* 77 Cal.App.3d at p. 91.)

4. *A writ is a proper remedy here.*

 As discussed herein, the Board had jurisdiction to proceed with its hearing and Easebe failed to except itself from the exhaustion doctrine. Compliance with the doctrine is a *jurisdictional* prerequisite to seeking judicial relief. (*United States* v. *Superior Court, supra,* 19 Cal.2d at p. 194; *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 293.) For the purpose of determining the restraint by prohibition, a court acts in excess of its jurisdiction when it has no power "to act except in a particular manner, or to give certain kinds of relief, or *to act without the occurrence of certain procedural prerequisites.*" (*Abelleira* v. *District Court of Appeal, supra,* at p. 288, italics added.) Because Easebe had not exhausted its administrative remedies, the superior court acted in "excess of jurisdiction" in issuing the injunction and it was proper for the Board to seek a writ. (*Hollon* v. *Pierce, supra,* 257 Cal.App.2d at p. 475; *Morton* v. *Superior Court, supra,* 9 Cal.App.3d at p. 981; *City of Los Angeles* v. *Superior Court* (1966) 246 Cal.App.2d 73, 75-76 [54 Cal.Rptr. 442], disapproved on other grounds *City of Los Angeles* v. *Superior Court* (1973) 8 Cal.3d 723, 732 [106 Cal.Rptr. 15, 505 P.2d 207]; *Transcentury Properties, Inc.* v. *State of California* (1974) 41 Cal.App.3d 835, 841 [116 Cal.Rptr. 487].)

 While an order granting an injunction is appealable (Code Civ. Proc., § 904.1), a mere right of appeal does not bar the right to a writ when appeal is not an adequate remedy. (*Northcutt* v. *Superior Court* (1924) 66

Cal.App. 350, 356 [226 P. 25].) An appeal is not adequate remedy to review an injunction order restraining a municipality from enforcing ordinances the validity of which have not yet been determined. (*City of Santa Monica* v. *Superior Court* (1964) 231 Cal.App.2d 223, 225 [41 Cal.Rptr. 824].

## DISPOSITION

Good cause appearing, the superior court is hereby prohibited from taking any further action in this matter other than to vacate the order granting the preliminary injunction until the administrative remedies have been exhausted in accordance with this opinion.

Danielson, J., concurred.

**LUI, J.**—I concur in the granting of the writ of prohibition because of the failure of real party to exhaust its administrative remedies. I do not agree with some of the reasoning expressed in the majority opinion.

Based on the limited record available to us, it appears that petitioner's enforcement of section 103.102, subdivision (f), has only an inconsequential impact on real party's First Amendment rights, and is not therefore constitutionally infirm. (*City Council* v. *Taxpayers for Vincent* (1984) 466 U.S. 789, 811 [80 L.Ed.2d 772, 791, 104 S.Ct. 2118].) Real party's First Amendment activities are not directly affected since neither the content nor the exercise of its First Amendment rights is infringed by the Board's attempt to enforce specific and reasonable health and safety laws.

There is no constitutional defect in the language contained in section 103.102, subdivision (f). Health and safety laws are important governmental matters and First Amendments rights cannot be viewed in a vacuum. The language contained in section 103.34 allows the Board to revoke a permit if the permittee violates any related provisions of the code. Sections 57.10.30 and 57.10.34 deal with overcrowding and makes the person in charge of the premises responsible for controlling such condition. If a building lacks adequate fire doors and therefore violates the fire code, the operator of the building would be responsible and the subject of sanctions.

In my view, the clear intent of section 103.102, subdivision (f), which permits the revocation of a permit in the event a building is unsafe, includes allowing revocation of a permit if the manner in which the building is occupied or operated by a permittee violates specific and definite provisions of the code.

Governmental interest in maintaining health and safety laws is great. The code as a whole meets these needs. It seems overly technical to me to hold that a city is powerless to enforce section 103.102, subdivision (f), merely because the language of the section does not include the term "use of a building." The enforcement of health and safety regulations by a public entity is proper if "necessary to further significant governmental interest." (*EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 189-190 [158 Cal.Rptr. 579].) As in *EWAP,* the governmental interest advanced here is unrelated to and does not restrict the free expression of First Amendment freedoms.

Because real party has not exhausted its administrative remedies below, the majority's disposition is appropriate.